427 So.2d 1110 (1983)
The TWENTY-FOUR COLLECTION, INC., Appellant,
v.
M. WEINBAUM CONSTRUCTION, INC., Appellee.
Nos. 82-938, 82-1258 and 82-1468.
District Court of Appeal of Florida, Third District.
March 15, 1983.
*1111 Lapidus & Stettin and Richard L. Lapidus, Miami, for appellant.
Pertnoy, Greenberg & Sobel and Stuart H. Sobel, Miami, for appellee.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
We reverse the final judgment entered in favor of M. Weinbaum Construction, Inc. and remand the cause for further proceedings.
The trial court, after a non-jury trial, entered a money judgment for Weinbaum, declared a mechanic's lien in its favor to the extent of the amount of the judgment, and denied The Twenty-Four Collection the relief sought in its counterclaim. To arrive at the foregoing result, the trial court necessarily had to conclude that Twenty-Four Collection, not the contractor, breached the contract under which Weinbaum was to make certain improvements to Twenty-Four Collection's leasehold.
There is absolutely no dispute in the record that on September 30, 1980, Weinbaum sent a mailgram to Twenty-Four Collection which stated, inter alia:
"I would like to have ... an agreement to eliminate the penalty clause in our contract due to the number and scope of modifications you have made, ... prior to the close of business on Thursday, October 2, 1980, or I will be forced to stop the job and cancel the permit I hold."
Similarly, there is absolutely no dispute that either on October 1 or 2, 1980, the lessee locked out and thus prevented Weinbaum from doing further work on the job. What is disputed is whether the mailgram constituted a repudiation of the contract by Weinbaum which would allow Twenty-Four Collection to treat the contract as broken and, if so, whether, in fact, Twenty-Four Collection, when it precluded Weinbaum from further performance, acted in reliance on this repudiation, that is, whether it locked out Weinbaum before or after it had knowledge of the contents of the mailgram.[1]
We are able to settle only the first of these disputed issues. The law is clear that where one party to the contract arbitrarily demands performance not required by the contract and couples this demand with a refusal to further perform unless the demand is met, the party has anticipatorily repudiated the contract, Pacific Coast Eng. Co. v. Merritt-Chapman & Scott Corp., 411 F.2d 889 (9th Cir.1969); Placid Oil Company v. Humphry, 244 F.2d 184 (5th Cir.1957); Vermillion v. Marvle Merchandise Co., 314 Ky. 196, 234 S.W.2d 673 (1950); Carrig v. Gilbert-Varker Corp., 314 Mass. 351, 50 N.E.2d 59, 147 A.L.R. 927 (1943), which anticipatory repudiation relieves the non-breaching party of its duty to further perform and creates in it an immediate cause of action for breach of contract. Hospital Mortg. Group v. First Prudential Dev., 411 So.2d 181, 182 (Fla. 1982); see also Mori v. Matsushita Elec. Corp., 380 So.2d 461 (Fla. 3d DCA 1980); Ferslew v. Relaford, 351 So.2d 368 (Fla. 1st DCA 1977). Weinbaum's demand that the penalty clause (which provided that the contract be completed by a certain date and, if not completed, that *1112 after such date a substantial daily penalty would be owed by Weinbaum) be eliminated, was a demand for extra compensation to which Weinbaum was not entitled by the contract. This demand, coupled with Weinbaum's threat to walk off the job and cancel the permit, was, as a matter of law, an anticipatory breach of the contract, notwithstanding Weinbaum's argument that until its threat to stop the job and cancel the permit was actually carried out, the threat was too equivocal to constitute an anticipatory breach. A requirement of actual breach as a prerequisite for anticipatory breach would totally nullify the doctrine of anticipatory breach.
We cannot, however, settle the second of the disputed issues, which is clearly one of fact. It was for the trial court to determine whether Twenty-Four Collection fired the first shot or merely justifiably retaliated. Unfortunately, the trial court made no such determination. Instead, in its final judgment, it ruled
"[T]hat anticipatory repudiation may not be relied upon as a defense, the same not being a part of the pleadings or defenses raised by the Defendant prior to the trial of this cause, nor permitted by amendment to conform to the proof, nor tried by consent.
"Accordingly, the Defendant's contention cannot legally be sustained."
This ruling of the trial court was, in our view, totally unfounded. First, although it is arguable that anticipatory repudiation is an affirmative defense required to be raised by the defendant's pleadings, see Jones v. Crooker, 31 Misc.2d 946, 221 N.Y.S.2d 388 (Sup.Ct. 1961), we think the better rule to be that a defendant's general denial to a plaintiff's breach of contract action places in issue the plaintiff's lack of breach of the contract. "[I]n order for the plaintiff to maintain its contract action, it must first establish performance on its part of the contractual obligations thereby imposed." Babe, Inc. v. Baby's Formula Service, Inc., 165 So.2d 795, 798, 6 A.L.R.3d 320 (Fla. 3d DCA 1964); Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So.2d 90 (Fla. 1st DCA 1979). Second, since an anticipatory repudiation creates a cause of action for breach of contract distinct from any defense, Lovett v. Lovett, 93 Fla. 611, 112 So. 768 (1927), which cause of action was pleaded in Twenty-Four Collection's counterclaim and tried together with the issues raised in the complaint, it is clear that anticipatory repudiation was, contrary to the trial court's conclusion, a part of the pleadings. Finally, even if the issue of anticipatory repudiation were not properly raised by the pleadings, the trial court was absolutely incorrect in concluding that the issue was not tried by implied consent. Indeed, the trial court's conclusion is diametrically and inexplicably contrary to what the record of the trial reveals. Page after page of unobjected-to testimony of the principals and employees of the parties and nearly the entirety of the parties' closing arguments to the court are precisely devoted to the issue of anticipatory repudiation.[2] Since it is clear that any issue, whether denominated an affirmative defense or a counterclaim, may be tried by implied consent, C.A. Davis, Inc. v. City of Miami, 400 So.2d 536 (Fla. 3d DCA 1981); Davanzo v. Resolute Ins. Co., 346 So.2d 1227 (Fla. 3d DCA 1977); Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So.2d 90, and that when an issue is so tried, it is treated in all respects as if raised by the pleadings without the necessity of a motion to amend the pleadings to conform to the evidence, DiTeodoro v. Lazy Dolphin Development Company, 418 So.2d 428 (Fla. *1113 3d DCA 1982), the trial court erred in failing to consider and determine the issue of anticipatory repudiation.
If after remand the trial court finds in favor of Weinbaum, then Weinbaum will be entitled, as it contends on its cross-appeal, to the final management payment of $2,500, a damage arising from the appellant's breach of the contract. The appellee will not, however, be entitled to a lien for that amount, Cooper v. Passmore, 103 Fla. 744, 138 So. 48 (1931). We reject appellee's contention on cross-appeal that it was entitled to the full amount of a claim assigned to it at a discount by Fandino & Sons, its subcontractor, since Weinbaum, by its contract with Twenty-Four Collection, was not entitled to the profit represented by this discount. In this latter respect only, the trial court's order is affirmed.
Affirmed in part; reversed in part, and remanded for further proceedings.
NOTES
[1] Weinbaum's assertion on appeal that it is undisputed that it was locked off the job by 7:00 a.m. on October 1, 1980, prior to Twenty-Four Collection's receipt of the mailgram, is belied by the record, which contains testimony that Charles Goldstein, president of the lessee, ordered the locks changed on October 2, 1980, after the receipt of the mailgram and discussion of its contents with Weinbaum. Moreover, Weinbaum's counsel conceded below that this very issue could be resolved only by the trial court's determination of the credibility of Weinbaum vis-a-vis Goldstein.
[2] Counsel for Weinbaum noted, "Mr. Lapidus has been pushing all along, all along in this whole case, all three days, Judge, that our Mailgram justified the lock-out." (Tr. 383). At no time did Weinbaum's counsel argue that this was not the issue, but rather his argument was first, that the mailgram was not a repudiation, and second, that his client was locked out before the mailgram was received (Tr. 384, 386). He told the court that a determination of the credibility of Weinbaum and Goldstein concerning the time of receipt of the mailgram in relation to the lockout was crucial (Tr. 386), and that the "only point really before the Court is ... anticipatory abandonment or lock-out." (Tr. 392). Counsel for The Twenty-Four Collection agreed (Tr. 396, 407). And so did the court (Tr. 393-395).